# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM E. FAETH and BREA L. FAETH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | CASE NO. 3:12-00162 |
| v. ) | JUDGE SHARP / KNOWLES |
| ) | |
| ) | |
| REGIONS BANK, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction, Background, and Undisputed Facts[1]

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 4. Defendant has additionally submitted a supporting Memorandum of Law (Docket No. 18); a Statement of Undisputed Material Facts (Docket No. 10); the deposition transcripts of E.J. Bailey, Peter G. Djinis, Nelson Everhardt, Cassandra Franklin, Samantha Hendrickson, Angela D. Johnson, Yulia Kalk, Donna Jones, Vincent Sims, Heather Thornburgh, and Jeff Whatley (Docket Nos. 5-1 - 5-11), the Declaration of Kimberly Townsley (Docket No. 7), and the Declaration of Lea Carol Owen with attachments (many of which are filed under Seal)(Docket Nos. 8-1 - 8-30).

Plaintiffs, who are proceeding pro se, have failed to respond either to Defendant's Motion or its Statement of Undisputed Material Facts.

---

[1]The following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

1

Plaintiffs are a husband and wife who, in March 2006, invested a lump-sum of $100,000 with Park Capital Management Group ("PCMG"), run by Mr. Park and Ms. Jones. Second Amended Complaint, Docket No. 43, *Jackson v. Regions Bank*, No. 3:09-cv-00908; Ex. 1 to Owen Decl., at ¶¶ 21-37. Plaintiffs conveyed the $100,000 to Mr. Park via a check written on a Bank of America checking account,[2] made payable to "PCMG," and signed by Plaintiff Bill Faeth. Exs. 1 and 6 to Owen Decl. Plaintiffs had met Mr. Park through mutual friends two years prior to their investing with him, and considered him to be a personal friend. Ex. 6 to Owen Decl. Plaintiffs made the decision to invest with Mr. Park based on their personal observations of him, the strength of their personal friendship with him, and on the affirmations of their mutual friends that Mr. Park provided extraordinary returns. Ex. 6 to Owen Decl., ¶¶ 7-8. Plaintiffs did not perform a free FINRA Broker Check report or conduct any other due diligence to investigate Mr. Park's integrity and reliability. Ex. 6 to Owen Decl., ¶ 11.

At the time Plaintiffs' conveyed the money to Mr. Park, they were experienced entrepreneurs, supporting themselves via successful businesses they had founded years before and actively continued to manage. Exs. 8 and 9 to Owen Decl. Plaintiffs were living in a million-dollar home, had an annual income of approximately $400,000, and had six-figure savings in the bank. *Id.*

Through their March 2006 investment, Plaintiffs engaged Mr. Park and PCMG to provide securities and other investments, to facilitate investments, and to provide administrative services with respect to those investments, intending that Mr. Park and PCMG use their $100,000 to

---

[2]At the time Plaintiffs conveyed the $100,000 to Mr. Park and PCMG, they were customers of the Bank of America, and not of Union Planters Bank or Regions Bank. Ex. 7 to Owen Decl.; Townsley Decl., ¶¶ 3-6, 8.

purchase investments on their behalf.  Ex. 1 to Owen Decl., ¶ 21; Ex. 6 to Owen Decl., ¶ 8.  On or around March 21, 2006, Mr. Park sent Plaintiffs trade confirmations indicating that their $100,000 had been used to make various purchases for Account 53274.  Ex. 11 to Owen Decl. Mr. Park later sent Plaintiffs a "Snapshot" statement for their investment account for the period from July 1, 2006 - September 29, 2006.  Ex. 12 to Owen Decl.; and Jones Dep., 38:3-40:23 generally.

Unbeknownst to Plaintiffs, Mr. Park was perpetrating investment fraud.  Exs. 1, 6 to Owen Decl.  Mr. Park and Ms. Jones stole Plaintiffs' money, and that of others, spending it on luxury cars, jewelry, exotic vacations, expensive meals, and the like.  Ex. 1 to Owen Decl., at ¶¶ 21-37.  Upon the discovery of Mr. Park's criminal activity by one of his victims, the brokerage company through which Mr. Park worked and the federal authorities became involved, and PCMG was shut down at the end of June 2008.  Jones Dep., 33:20-22; Kalk Dep., 23:2-25:5.  By that time, Mr. Park and Ms. Jones had dissipated virtually all of the millions of dollars they had obtained from "investors" over the course of their seven-year fraud scheme.  Jones Dep., 33:5-25).  Mr. Park and Ms. Jones ultimately plead guilty to mail and wire fraud and to money laundering, and were sentenced to a Federal penitentiary.  Exs. 2-5 to Owen Decl.

Mr. Park was a customer of Union Planters Bank (and then Defendant, its successor) from 1995 through 2008, when Mr. Park's criminal activity was discovered.  Ex. 24 to Owen Decl.  While engaging in his criminal activity, prior to its June 2008 discovery, Mr. Park maintained three demand deposit accounts (business, individual, and joint) at Union Planters Bank (and then Defendant, its successor). Ex. 1 to Owen Decl., at ¶ 39; Ex. 25 to Owen Decl., at ¶ 6; Jones Dep., 33:5-19; Kalk Dep., 18:16-20:20, 22:18-23:1.  Two of Mr. Park's checking

accounts were personal accounts, and the third was the primary business checking account of his sole proprietorship PCMG. Ex. 25 to Owen Decl.; Sims Dep., 11:16-13:18, 14:1-14. None of Mr. Park's accounts was a fiduciary or trust account; rather each was a basic checking account with no fiduciary features. Ex. 25 to Owen Decl.; Djinis Dep., 102:23-104:19, 106:4-12.

There is no evidence that Plaintiffs were customers of Defendant, and Plaintiffs did not deliver the $100,000 to Mr. Park expecting him to purchase securities on their behalf from Defendant. Ex 1, 6, 11-15 to Owen Decl.; Townsley Decl., ¶¶ 6, 8. While financial institutions have a responsibility to identify and report suspicious activity to law enforcement, those responsibilities do not arise out of a duty to those doing business with bank customers or, nor do they encompass pursuing independent investigations once a bank has determined that suspicious activity exists. Ex. 24 to Owen Decl. Rather, third parties who do business with bank customers bear the responsibility of conducting the appropriate due diligence to ensure that their private interests are protected, and banks are not required to insure third parties against losses caused by a bank customer. *Id.*

At all times relevant to Plaintiffs' claims, Mr. Park was affiliated with First Discount Brokerage ("1DB") or one of its predecessors as a registered securities representative. Exs. 6, 19 to Owen Decl.; Kalk Dep., 10:15-13:5. 1DB is a registered broker-dealer with the SEC and is registered with two self-regulatory organizations, "FINRA" and "NASDAQ." Ex. 17 to Owen Decl.; Kalk Dep., 25:13-26:4. FINRA is the largest independent regulator for securities firms doing business in the United States. Ex. 18 to Owen Decl. Under FINRA, 1DB had a duty to either supervise Mr. Park regarding any securities-related activity in which they knew he was engaged, or to prevent him from engaging in any such activity. Ex. 6 to Owen Decl., ¶ 17; Kalk

4

Dep., 10:15-13:5.  While 1DB and its predecessors made efforts to supervise Mr. Park, engaging in annual audits that included a duty to check on the propriety of his business checking accounts, 1DB nevertheless failed to properly comply with its supervisory obligations and Plaintiffs sued 1DB in federal court over these failings.  Exs. 1-6, 18, 20-23 to Owen Decl.  Plaintiffs settled their claims with 1DB.  Ex. 23 to Owen Decl.

At all times relevant to Plaintiffs' Complaint, Defendant complied fully with all legal and regulatory obligations related to the Bank Secrecy Act and the USA PATRIOT Act.  Exs. 24, 25, 30 to Owen Decl.; Kjinis Dep., 20:1-23:1, 86:10-25, 89:20-91:25; Franklin Dep., 4:1-11, 4:23-5:2, 5:21-6:4, 6:16-16:15, 18:4-22:1, 25:16-26:10, 27:3-20, 36:7-37:11; Bailey Dep., 4:8-10, 5:9-6:12, 8:2-16, 9:5-20, 11:3-20:11, 22:1-24:1, 26:4-33:9, 34:1-41:14, 46:22-48:5; Thornburgh Dep., 3:1-6, 4:3-6:10, 7:6-18:16; Everhardt Dep., 3:1-8, 4:3-16:2, 20:17-25:1; Johnson Dep., 9:1-24; Whatley Dep., 6:3-7:12, 11:11-15:22.  Defendant's policies and procedures reflect timely updates that coincide with the effective date of changes in the regulations.  Ex. 25 to Owen Decl.  Additionally, at all times relevant to the case at bar, Defendant complied with industry standards applicable to depository institutions in processing deposits from third parties who were clients of Mr. Park and/or PCMG, and in processing debit transactions through his three accounts.  *Id.*

Plaintiffs sue Defendant for negligence and recklessness, unjust enrichment, and deceptive or unfair practices under the Tennessee Consumer Protection Act.[3]

---

[3]Plaintiffs William E. and Brea L. Faeth were formerly Plaintiffs in a multi-plaintiff lawsuit styled *Raymond Jackson, et al. v. Regions Bank*, Case No. 3:09-908.  Counsel representing Plaintiffs in *Jackson* filed a Motion to Withdraw as counsel for the Faeths and a Motion to sever the Faeths' claims.  Docket No. 67, Case No. 3:09-908.  That Motion was subsequently granted, and the claims of the Faeths were assigned a new (the instant) case number.  The claims of the Faeths against Defendant are set forth in the "Second Amended Complaint" filed in *Jackson*.  Docket No. 43, Case No. 3:09-908.

Defendant filed the instant Motion for Summary Judgment and supporting materials arguing that it is entitled to summary judgment because: (1) it did not owe a duty of care to Plaintiffs since they were not its customers and since Mr. Park's accounts were not fiduciary in nature, since it did not breach any duty of care, and since it did not proximately or actually cause Plaintiffs any harm; (2) Plaintiffs cannot show any "conscious objective or desire" on Defendant's part to engage in harmful conduct or cause a harmful result, nor can Plaintiffs show any conduct of Defendant rising to the level of "recklessness"; (3) Plaintiffs cannot prevail on their unjust enrichment claim because they did not confer any benefit upon Defendant; and (4) Defendant did not engage in unfair or deceptive practices, or cause any loss to Plaintiffs. Docket No. 18.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

## II. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on March 16, 2012. Docket No. 4. Plaintiffs have

---

It should also be noted that the "Second Amended Complaint" filed in *Jackson* contains four Counts – the three Counts discussed above, plus a fourth Count for fraudulent and negligent misrepresentation. *Id.* The fourth Count, however, does not pertain to the Faeths.

failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed.  Each disputed fact must be supported by a citation to the record. ...
> . . .
> **g. Failure to Respond.**  Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiffs have also failed to respond to Defendant's Statement of Undisputed Material Facts.  Pursuant to Local Rule 56.01(g), Plaintiffs' failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment."  Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B.  Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiffs have failed to respond.  *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998).  As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded.  The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ...  The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of

demonstrating the absence of a genuine issue as to a material fact."
*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. The Case at Bar**

As has been noted, Plaintiffs sue Defendant for negligence and recklessness, unjust enrichment, and deceptive or unfair practices under the Tennessee Consumer Protection Act. As has also been noted, Plaintiffs have not responded either to Defendant's Motion or its Statement of Undisputed Material Facts. Accordingly, there are no disputed facts at issue and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law on each claim.

Plaintiffs assert that Defendant is liable under a negligence theory because, they argue, it failed to comply with regulations arising under the Bank Secrecy Act and the USA PATRIOT Act. Docket No. 43, Case No. 3:09-0908, Second Amended Complaint ¶¶ 39-49. In order to prevail on their negligence claim, Plaintiffs must show that Defendant owed them a duty of care and breached that duty, that the breach of that duty caused them injury or loss, that there is a cause-in-fact connection between the injury/loss and Defendant's conduct, and that there is the existence of proximate or legal cause. *Eskin v. Bartee*, 262 S.W.3d 727, 735 n. 19 (Tenn. 2008) (*citing Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005), and *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005)).

In the case at bar, it is undisputed that at all times relevant to Plaintiffs' Complaint: Defendant complied fully with all legal and regulatory obligations related to the Bank Secrecy

9

Act and the USA PATRIOT Act; Plaintiffs were not Defendant's customers; none of Mr. Park's accounts was a fiduciary or trust account; Plaintiffs did not deliver the $100,000 to Mr. Park expecting him to purchase securities on their behalf from Defendant; third parties who do business with bank customers bear the responsibility of conducting the appropriate due diligence to ensure that their private interests are protected; banks are not required to insure third parties against losses caused by a bank customer; and Defendant did not cause Plaintiff any harm. Moreover, the law is well-settled that banks do not owe non-customers a duty to protect them from the intentional torts of the bank's customers. Accordingly, Plaintiffs cannot establish that Defendant owed them a duty of care. Absent any such duty of care, Defendant cannot be held liable to Plaintiffs on the basis of negligence.

With regard to Plaintiffs' recklessness claim, recklessness is considered the equivalent of gross negligence, and where conduct cannot constitute negligence, it can not, as a matter of law, constitute recklessness. *See., e.g., Smith v. Wade*, 461 U.S. 30, 72 (1983). As has been discussed above, Plaintiffs cannot sustain their negligence claim. Because they can not hold Defendant liable under a negligence theory, they can not hold Defendant liable under a recklessness theory, and Defendant is entitled to a judgment as a matter of law on Plaintiffs' recklessness claim as well.

As noted, Plaintiffs also sue Defendant under the theory of unjust enrichment. In order to establish their unjust enrichment claim, Plaintiffs must demonstrate that they conferred a benefit upon Defendant of which Defendant was aware and accepted, that the acceptance of said benefit was under such circumstances that it would be inequitable for Defendant to retain the benefit without payment of the value thereof, and that they have exhausted all remedies against the

person with whom they enjoyed privity of contract. *See, e.g., Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

The record in the case at bar is completely devoid of any evidence demonstrating that Plaintiffs conferred any benefit upon Defendant, and, as has been noted, Plaintiffs were not customers of Defendant. Absent the conference of a benefit upon Defendant, Plaintiffs cannot prevail on their unjust enrichment claim.

With regard to Plaintiffs unfair or deceptive practices claim under the Tennessee Consumer Protection Act ("TCPA"), Plaintiffs must demonstrate that Defendant engaged in an unfair or deceptive act or practice, as defined under the TCPA, and that Plaintiffs suffered a loss of money, property, or thing of value as a result of Defendant's unfair or deceptive act or practice. T.C.A. §47-18-109.

The record in the case at bar is completely devoid of any evidence suggesting that Defendant engaged in any unfair or deceptive act or practice, and completely devoid of any evidence suggesting that Plaintiffs suffered a loss caused by any act or practice of Defendant. Moreover, it is undisputed that Plaintiffs were not Defendant's customers and, accordingly, that Defendant did not directly engage in any consumer transaction with Plaintiffs. Absent any evidence of the foregoing, Plaintiffs cannot sustain their unfair or deceptive practices claim.

### IV.  Conclusion

For the foregoing reasons, the undersigned concludes that there are no genuine issues of material fact and that Defendant is entitled to a judgment as a matter of law on each of Plaintiffs' claims. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge